# COURT OF APPEALS OF VIRGINIA

## Record No. 2147-24-4

CHOUAIB BAHOUJABOUR

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Lorish, Callins and White

Argued at Alexandria, Virginia

Opinion Issued August 4, 2026[*]

## FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Meghan Shapiro (Christopher Leibig; Law Office of Meghan Shapiro; The law Office of Chris Leibig, LLC, on briefs), for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE DOMINIQUE A. CALLINS

Chouaib Bahoujabour appeals his convictions for domestic assault and battery and two counts of rape. He argues that the trial court abused its discretion by declining to exclude expert testimony offered by the Commonwealth that relied on facts not in evidence. At bottom, this dispute asks us to determine whether and when an expert may rely on knowledge obtained outside the scope of the immediate criminal proceedings. We hold that an expert may do so, provided that the knowledge relates to the information that makes the witness an expert in the first place and that the knowledge does not pertain to the specific facts of the case. Finding no error by the trial court, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

After he sexually assaulted his wife, F.H., a grand jury indicted Bahoujabour on one count of domestic assault and battery and two counts of rape. Bahoujabour received advance notice of the Commonwealth's intention to "call Aimee Stockenstroom, a social worker, as an expert witness." The Commonwealth designated Stockenstroom to testify about "domestic violence generally and the impact trauma can have on victims of domestic violence and sexual assault as it relates to their memory and their behavior, including delayed reporting." Bahoujabour moved to exclude Stockenstroom's testimony. He argued that Stockenstroom's testimony would "lack[] an adequate foundation" and would be "speculative and opin[ing] on the credibility of [o]ther witness[es]." He also contended that Stockenstroom was unqualified, that her testimony would invade the province of the jury, and that it would unfairly prejudice and confuse the jury. The court did not rule on the motion pre-trial.

At trial, the Commonwealth offered Stockenstroom as "an expert in the dynamics of domestic violence, particularly sexual violence in domestic relationships, and on trauma responses particularly with respect to domestic violence and sexual violence [survivors]." Bahoujabour renewed his prior objections, principally arguing that Stockenstroom would impermissibly testify "to data from other [survivors]." The trial court overruled the objections.

Stockenstroom then opined about the "variety of ways that people can respond to experiences of sexual and domestic violence." According to Stockenstroom, survivors may "cry[], scream[], yell[]," laugh "eerie[ly]," "shut[] down," "mov[e] really quickly," lose focus, or become distracted easily. She explained how regions of the brain operate in response to trauma

---

[2] We review the evidence in the light most favorable to the prevailing party at trial—here, the Commonwealth. *See Commonwealth v. Cady*, 300 Va. 325, 329 (2021). In doing so, if we discuss facts found in the sealed record, we unseal only those facts. *See Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

or other stimuli, including how the amygdala may trigger "involuntary [survival] responses." She testified that during and after traumatic experiences, parts of the brain may be "offline or out of [a person's] control," and survivors may remember events in a fragmented way or out of sequential order. Based on published research regarding her own client observations, Stockenstroom testified that victims commonly report remaining in an abusive relationship due to pressure created by physical, psychological, emotional, and financial abuse cycles. She also opined that domestic violence or sexual abuse violence survivors may delay reporting their experiences for fear of retribution, embarrassment, or safety.

Stockenstroom confirmed that she did not know F.H. and that she did not testify as to the credibility of any witness involved in the case. Instead, she explained that her testimony was based on her 20 years of experience in "provid[ing] individual or counseling support services."

After the jury returned verdicts finding Bahoujabour guilty on the indictments, he moved to set the verdicts aside. Bahoujabour argued that Stockenstroom improperly based her expert testimony on "her qualifications and personal experience working with [survivors] of domestic violence." The trial court denied his motion. It imposed the sentence fixed by the jury: 11 years of active incarceration on his rape convictions and a $1,000 fine on his domestic assault and battery conviction. This appeal follows.

ANALYSIS

Bahoujabour contends that the trial court erred by denying his motion to exclude portions of Stockenstroom's testimony which introduced several facts not in evidence. He further argues that these non-evidentiary facts were irrelevant and prejudicial to him. Thus, the trial court exacerbated its error by denying his motion to set aside the verdict based on the court's failure to exclude Stockenstroom's testimony. On the whole, we disagree.

Expert testimony is generally admissible in criminal proceedings "if it is based upon facts personally known or observed by the expert, or based upon facts in evidence." Va. R. Evid. 2:703(b). "Only relevant expert testimony may be introduced." *Watson v. Commonwealth*, 298 Va. 197, 206 (2019). And, under Rule of Evidence 2:702(a)(ii), expert testimony is admissible in criminal proceedings when it satisfies three conditions:

> First, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Second, the testimony must comprise "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Third, the subject matter must be "beyond the knowledge and experience of ordinary persons, such that the jury needs expert opinion in order to comprehend the subject matter, form an intelligent opinion, and draw its conclusions."

*Stevens v. Commonwealth*, 72 Va. App. 546, 554 (2020) (alteration in original) (quoting Va. R. Evid. 2:702(a)). Unlike its civil counterpart, however, Rule of Evidence 2:703(b) "does not provide an exception for the admission of hearsay used by an expert in formulating an opinion." *Holloman v. Commonwealth*, 65 Va. App. 147, 169 (2015) (holding that a notebook and an expert's associated testimony inadmissible where the notebook and its contents were unrelated to the facts of the case). Indeed, in criminal proceedings, expert witnesses may not "base [their] opinion on facts not in evidence." *Simpson v. Commonwealth*, 227 Va. 557, 565 (1984).

Bahoujabour contends that Stockenstroom's opinions were based on her observations of other victims, and not on facts in evidence, in direct contravention of *Simpson*.[3] Conversely, the

---

[3] On brief, Bahoujabour also takes issue with Stockenstroom's qualification as an expert in "the dynamics of domestic violence and sexual violence and in trauma and trauma responses, particularly among individuals who've experienced domestic and sexual violence." He insinuates that Stockenstroom's "area of expertise was labeled far more broadly than" the trial court should have permitted and that "[u]nder that mantle" the court permitted Stockenstroom's objectionable testimony. Yet at trial, Bahoujabour did not object to the broad mantle of her expertise, and, on appeal, he does not assign error to Stockenstroom's qualification as an expert.

Commonwealth maintains that Stockenstroom's testimony falls under the well-established exception to the *Simpson* rule as set forth by this Court in several post-*Simpson* cases.

Our Supreme Court in *Simpson* distinguished between facts that an expert acquires through personal observations, experience and training, and other evidence admitted at trial, and those otherwise excluded from the record. *Id.* at 566. On the proverbial heels of *Simpson*, however, we opined that experts in criminal proceedings may reference records "customarily relied upon and consulted by those" in the expert's field. *Funderburk v. Commonwealth*, 6 Va. App. 334, 338 (1988); *see also Kern v. Commonwealth*, 2 Va. App. 84, 88 (1986) (analogizing a brochure "prepared as a collection of data customarily available to gemstone appraisers" to "a medical treatise consulted by an expert or . . . a real estate record consulted by a real estate appraiser"). When "[s]uch information and knowledge is within the expertise of the [expert witness]," a trial court does not err in admitting the expert's testimony though the records "are not in evidence or not identified." *Funderburk*, 6 Va. App. at 338.

Without reconciling our departures from *Simpson's* prohibition, we later pronounced that these prior decisions did not create a "broad exception" to *Simpson*. *Corado v. Commonwealth*, 47 Va. App. 315, 329 (2005) (observing that allowing experts in criminal cases to generally rely on evidence "reasonably rel[ied] upon" by those in the expert's field would "directly contradict[] the" *Simpson* rule). Thus we have held that experts do not violate the *Simpson* rule when they rely on (1) standardized data used as a tool by the expert and without which the expert could not form an opinion or (2) qualitative information gathered through observations unrelated to the specific facts of a case. *See, e.g.*, *Kern*, 2 Va. App. at 87-88 (upholding expert testimony relying on standardized data about the "per-carat value" of gemstones); *Funderburk*, 6 Va. App. at 338 (upholding expert testimony relying on standardized tables outlining blood type statistics);

- 5 -

*Corado*, 47 Va. App. at 331 (following *Simpson* to redeem a gang expert's opinions where "[t]he facts underlying his opinion were the subject of his testimony and were thus in evidence").

Although *Simpson* bars expert testimony relying on facts not in evidence, *Kern* and *Funderburk* recognize that an expert's opinion is often rendered in the form of an analytical conclusion derived from data collected in their field—put simply, "information and knowledge . . . within the expertise of the [expert]." *Funderburk*, 6 Va. App. at 338. Framed this way, the data undergirding the expert's analytical conclusions is not "fact" offered for adjudication by the fact finder; it merely enables the expert to render their testimony in the first place.

We conclude that Stockenstroom's testimony does not run afoul of *Simpson*. Stockenstroom spoke generally about the "variety of ways that people can respond to experiences of sexual and domestic violence." She based her opinions on her extensive experience working with survivors in other cases throughout her 20-year career. Her clinical observations from prior cases are the "information and knowledge" within her expertise and thereby form the basis of her expertise. *Funderburk*, 6 Va. App. at 338. In this way, Stockenstroom's knowledge from prior cases is akin to the current-market-value brochure in *Kern* or the statistical tables in *Funderburk* since it is "information and knowledge" within her "expertise." *Id.* at 338. And drawing comparison to the similarly "soft" science of criminal investigations, Stockenstroom's expertise formed through case work is more like the *Corado* gang expert's testimony about "gang names, colors, hand signs, and motivations" than his testimony about the specific facts of the case. 47 Va. App. at 328.

Further, Bahoujabour's argument that Stockenstroom's testimony "massively bolster[ed]" F.H.'s testimony is without merit. As the Commonwealth notes, *Cruz v. Commonwealth*, 84 Va. App. 703 (2025), controls this issue. Just like the expert in *Cruz*, Stockenstroom never met

F.H., did not testify about any witness, and her testimony was "solely based on her knowledge and experience rather than any opportunity she had to evaluate [the survivor's] credibility." *Id.* at 721. Thus, her testimony did not improperly bolster F.H.'s testimony since its "persuasiveness . . . remained a question of credibility for the jury." *Id.* at 721-22. Further, since F.H. accused Bahoujabour of marital rape and domestic violence and since Bahoujabour "put into direct question" her credibility, Stockenstroom's testimony was relevant to understand survivors' conduct post-trauma. *See* Va. R. Evid. 2:401 ("'Relevant evidence' means evidence having *any* tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." (emphasis added)).

CONCLUSION[4]

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*.

---

[4] Bahoujabour also argues that the trial court should have set aside the verdict since he claims interpreters for F.H.'s testimony failed to accurately translate, depriving him of his confrontation rights. We may consider "ruling[s] of the trial court . . . as a basis for reversal" if the litigant objects "with reasonable certainty at the time of the ruling." Rule 5A:18. But objections must be "both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 750, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). An objection is timely if it is raised "at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." *Brandon v. Cox*, 284 Va. 251, 255 (2012) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)). Bahoujabour did not raise his challenge to the interpreter's competency until his post-trial motion to set aside the verdicts. Yet the interpreter, contemporaneous with the time of the witness's examination, articulated in English their difficulties in translating two disputed phrases. By failing to object to perceived discrepancies in the translations in the moment, Bahoujabour "deprived the trial court of the opportunity to consider and rule on" his competency argument. *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 80 (2010). And though Bahoujabour argues that he could not learn the "true meaning of these phrases" until after trial, he was aware of the interpreter's challenges as they arose, the same having been articulated clearly in English. Thus, applying the good-cause exception as Bahoujabour asks is inappropriate since he had "the opportunity to object . . . in the trial court." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011).